(108 So. 646)

## HUMBER v. STATE.   (4 Div. 57.)

(Court of Appeals of Alabama.   Jan. 19, 1926.
Rehearing Denied May 11, 1926.)

1. **Criminal law ☜1036(1)—Objection to question after it has been answered is too late, unless record refutes idea of speculating on answer.**

To be reviewed, objection to question must be made before it has been answered, unless record refutes idea of speculating upon answer.

2. **Criminal law ☜1120(8).**

Exceptions to introduction of testimony, not patently illegal or irrelevant, will not be considered, unless record shows that grounds of objection were specified.

3. **Criminal law ☜1120(8).**

In reviewing objection to introduction of evidence, appellate court will consider only grounds of objection which were clearly specified, in view of circuit court rule 33, Code 1923, vol. 4, p. 906.

4. **Criminal law ☜1141(2).**

Appellant must affirmatively show error, and, in view of circuit court rule 33, Code 1923, vol. 4, p. 906, court need not cast about for grounds of objection.

5. **Criminal law ☜475.**

Testimony of doctor as to location and character of bullet wounds upon deceased from which death resulted *held* competent.

6. **Criminal law ☜366(4).**

In homicide prosecution, admission of part of alleged dying declaration to effect that wife shot him, "me begging her not to," *held* not error, being of res gestæ of killing.

7. **Homicide ☜214(1).**

In homicide prosecution, dying declaration of deceased that his wife shot him for nothing could have been properly admitted.

8. **Homicide ☜214(1)—In homicide prosecution against wife, dying declaration of husband that she accused him of trying to steal everything she had held properly admitted.**

In homicide prosecution against wife, dying declaration of husband that she accused him of trying to steal everything she had *held* properly admitted as res gestæ and shedding light on accused's motive.

9. **Homicide ☜219—Exclusion of cross-examination of physician as to effect of morphine on veracity of addict intended to discredit dying declaration held not abuse of discretion, absent evidence that deceased was so addicted.**

In homicide prosecution, where dying declaration was introduced, exclusion of cross-examination of medical witness as to whether habitual use of morphine created inveterate liars *held* not abuse of discretion, where evidence that deceased had been so addicted had not yet been introduced.

10. **Criminal law ☜680(1), 1153(3).**

Order of proof is largely discretionary with trial judge, and his action will not be reversed except for abuse of discretion.

11. **Criminal law ☜1170½(3).**

In homicide prosecution, overruling objection to question as to kind of hole bullet made in headboard of bed *held* not ground for reversal, where question was unanswered.

12. **Criminal law ☜1166½(12)—Court's remark that bullet hole was matter of common knowledge held not to require reversal.**

On trial for murder, remarks of court, in overruling objection to question concerning bullet hole, that bullet hole was matter of common knowledge, *held* not so prejudicial or improper as to require a reversal; being indication of court's reason for overruling objection.

13. **Criminal law ☜476—Opinion of doctor that certain wound was the fatal one held admissible.**

On trial for murder, opinion of doctor that fatal wound was one "that came out just above the lower border of the ribs that penetrated the liver" *held* admissible.

14. **Criminal law ☜475—Physician may describe location of wounds and conclusion as to place of entry and exit and difference marking such places.**

Physician may describe location of wounds and state from his examination his conclusion that bullet entered one place and left at another, and that bullet wounds are characteristically different at points of entry and exit, and what that difference is.

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**15. Criminal law ⚖️402(1).**

Copy of prescription, original of which was in adjoining state, *held* properly excluded because not best evidence, in absence of proper predicate for introduction of secondary evidence.

**16. Criminal law ⚖️400(4).**

Mere fact that prescription is in drug store in adjoining state does not render secondary evidence of its contents admissible.

**17. Criminal law ⚖️815(1).**

Charge not predicated upon evidence *held* properly refused.

**18. Criminal law ⚖️798(1).**

Refusal of charge laying too great stress on individual view of jurors, and permitting each juror to define reasonable doubt according to his individual view, *held* proper.

**19. Criminal law ⚖️829(1).**

Refusal of charge sufficiently covered by given charge *held* not error.

Appeal from Circuit Court, Russell County; J. S. Williams, Judge.

Leila C. Humber was convicted of murder in the second degree, and she appeals. Affirmed.

Denson & Denson, of Opelika, and Frank M. De Graffenried, of Seale, for appellant.

Evidence by the witness Elrod as to the wounds received by deceased was erroneously admitted. Humber v. State, 19 Ala. App. 451, 99 So. 68. Counsel argue the other questions raised and treated, but without citing additional authorities.

Harwell G. Davis, Atty. Gen., and Thos. E. Knight, Jr., Asst. Atty. Gen., for the State.

It is competent for a practicing physician to give testimony of entrance and exit points of bullet wounds. Stevens v. State, 138 Ala. 71, 35 So. 122; Clayton v. State, 185 Ala. 13, 64 So. 76; Rohn v. State, 186 Ala. 5–9, 65 So. 42; Mathis v. State, 15 Ala. App. 245, 73 So. 122. The proper predicate being laid, there was no error in admitting the dying declaration. Stevens v. State, 138 Ala. 71, 35 So. 122; Humber v. State, 19 Ala. App. 451, 99 So. 68; Oliver v. State, 17 Ala. 587; Walker v State, 52 Ala. 192. The question whether morphine addicts are liars was properly disallowed. Jones v. State, 181 Ala. 63, 61 So. 434. The trial court properly held that bullet holes were matters of common knowledge. Watts v. State, 177 Ala. 24, 59 So. 270; Lightner v. State, 195 Ala. 687, 71 So. 469. Charge A was correctly refused. Jackson v. State, 18 Ala. App. 558, 93 So. 272. Charge B was bad. Ex parte Jones, 213 Ala. 390, 104 So. 773.

BRICKEN, P. J. This is the second appeal in this case. See Humber v. State, 19 Ala. App. 451, 99 So. 68. Numerous questions here presented were decided by this court in the opinion, supra. We therefore deem it unnecessary to again decide such questions as were settled and determined by that opinion.

[1-4] Rules of practice do not permit litigants to speculate upon the answer to questions propounded to a witness. In order to be reviewed, upon appeal, it must appear that an objection was interposed to the question when the question was propounded and before the answer of the witness, or the record should show that the answer was returned so quickly as that time for objection to the question was not allowed. An objection to a question made after the question has been answered comes too late, unless, as stated, the record refutes the idea of speculating on the answer. This ruling disposes of a number of exceptions reserved in the court below, based upon objections to questions propounded to various witnesses. We also observe that in numerous instances where the court's ruling was invoked by the interposition of objections, etc., no grounds of objection were stated, the record disclosing "the defendant objected to the above question," also "the defendant objected to the above testimony." The rule is clear and well settled that, where objection and exception are reserved to the introduction of testimony which is not patently illegal, or irrelevant, such exception will not be considered an error, unless the record shows that the grounds of objection were specified. Furthermore, the appellate court, in revising such decision, must consider only the grounds of objection which are shown to have been clearly specified. Bush v. State, 19 Ala. App. 650, 100 So. 307; circuit court rule 33, Code 1923, vol. 4, p. 906. The party appealing must affirmatively show error, and the rule, supra, obviates the necessity of the court to "cast about" for the grounds of objection, which the court is under no duty to do. Washington v State, 106 Ala. 58; 17 So. 546.

[5] There is direct authority to justify the court in its rulings upon the testimony of Dr. Elrod, relative to the location and character of the bullet wounds upon the deceased, from which wounds the death of Lucius F. Humber, without dispute, resulted. Rohn v. State, 186 Ala. 5, 65 So. 42. In the Rohn Case, supra, the Supreme Court said:

" * * * It was clearly competent for the state to prove that bullet wounds are characteristically different at the points of entry and exit, respectively, and what that difference is; and any one who has often observed and examined such wounds is a competent witness thereto."

The opinion goes further and says:

"It was competent also for the state's witness, a medical man, well acquainted with the human anatomy and with gunshot wounds, to state from his examination of the wounds of

deceased his conclusion that the bullet entered at the back to the left of the spinal column and made its exit through the heart in front."

See, also, Rikard v. State, 15 Ala. App. 497, 73 So. 992.

[6, 7] Proper and sufficient predicate for the admission of dying declaration was not only proven, but was conceded by defendant upon the trial. There was no error in admitting in evidence that part of the alleged dying declaration of the deceased to the effect that his wife shot him, "me begging her not to." It was of the res gestæ of the killing. Stevens v. State, 138 Ala. 71, 35 So. 122; Sullivan v. State, 102 Ala. 135, 142, 15 So. 264, 48 Am. St. Rep. 22. The dying declarations objected to in the Sullivan Case, supra, are peculiarly analogous to the dying declarations shown to have been made by Lucius Humber, the deceased, in this case. In the Sullivan Case, Emmerson, the deceased, made the following dying declaration, as shown in the opinion:

"Jim Sullivan cut me—he cut me for nothing —I never did anything to him."

The objections made to this testimony were:

"That it was a conclusion of the declarant—the opinion of the deceased—and that it did not relate to the circumstance or transaction of the killing."

The Supreme Court said:

"There is nothing in this objection. The statement certainly did relate to the act, or transaction of the killing. * * * He also said Sullivan cut him for nothing, and that he (the declarant) did nothing to Sullivan. True, this statement was very general, but it was admissible as a collective fact."

In the instant case, the court, through an abundance of caution, excluded that portion of the dying declaration, "She shot me for nothing." Under the authority above cited (Sullivan's Case, supra), the court below could properly have admitted said declaration also.

[8] Humber, the dying man, also said in his declaration, "She accused me of trying to steal everything she had." The court did not err in its rulings in this connection, for the reason the statement was of the res gestæ and therefore admissible; moreover, it tended to shed light on the motive of the accused. Stevens Case, supra: Oliver v. State, 17 Ala. 587.

[9, 10] The record shows that this question was propounded to Dr. Elrod by defendant on cross-examination:

"Q. If a person is addicted to the habitual use of morphine, is it a fact, and is it so recognized in your profession, that such persons so addicted to the habitual use of morphine are inveterate liars, and that no reliance whatever can be placed upon their statements?"

The state objected to this question, and the court sustained the objection. In doing so

there was no error, for at the time this question was propounded there was no evidence before the court to the effect that the deceased was addicted to the habitual use of morphine. After the objection was sustained, counsel for the appellant made known to the court that he expected to prove later, during the trial, that the deceased was habitually addicted to the use of morphine, and asked to be allowed to prove an affirmative answer to the question above set out by the witness then on the stand. Pretermitting any decision as to appellant's right to have the question answered, at a proper time, it is well settled that the conduct of the trial in the court below regarding the order in which evidence is admitted, rests largely in the discretion of the trial judge, and that his action will not be reversed except for abuse of discretion. At the time the question was propounded, appellant was not entitled to have it answered. The trial judge might have permitted an answer to the question upon the showing afterwards made, but no offer to do so was made, and, as stated, it was within the discretion of the trial court to regulate the reception of evidence, and this court cannot say from this record that that discretion was abused in the instant case.

[11, 12] It appears that, while state's witness Jones was being examined, after describing and referring to bullet holes in the floor, in the bedstead, and on the headboard of the bed, and in a mattress, the solicitor propounded this question to him: "Q. What sort of hole was that?" The defendant objected to the question, and the witness did not answer it, but the court said: "I think a bullet hole is a matter of common knowledge; the objection is overruled." No error can be predicated upon overruling the objection to this question as it was not answered, and the remark of the court was in the nature of an indication by the court to counsel of the reason why the court was of the opinion that the objection should be overruled, and in our opinion was not so prejudicial or improper as to require a reversal of the case.

[13, 14] Dr. Wolveridge's opinion as to which one of the wounds, there being five in the body of the deceased, was the fatal wound, was properly received in evidence. The question propounded to the doctor was:

"Q. Which one of the wounds, Doctor, in your judgment, was the really fatal wound? A. The one that came out just above the lower border of the ribs that penetrated the liver."

In an able brief, appellant's counsel insist that the answer of the witness should have been excluded, and counsel assert with apparent confidence that this evidence was held inadmissible on a former appeal in this case. In this counsel are mistaken. On the former appeal this court ruled, following decisions of our Supreme Court, that a physician should not be permitted to give his opinion as to the direction from which a shot was fired.

The reason for the rule there announced is that, after the nature and character of the wounds are described to the jury,. and their location on the body is fixed, it is as competent for one man as for another to say the direction from which the shot came that inflicted the wound, and therefore it is proper for the jury to find the direction, and improper for a witness to give his opinion as to that matter. However, the rule has long been recognized in this state that a physician may describe the location of the wounds, and state from his·examination of the wounds of the deceased his conclusion that the bullet entered at one place and made its exit at another (Rikard v. State, 15 Ala. App. 497, 500, 73 So. 992), and that bullet wounds are characteristically different at the points of entry and exit, respectively, and what that difference is (Rohn v. State, 186 Ala. 5, 8; 65 So. 42).

[15, 16] The prescription Dr. McCann was interrogated about was the best evidence of what it called for. Had it been introduced in evidence, Dr. McCann might have interpreted it to the jury, if that had been necessary in order to enable them to understand it. No proper predicate was laid for the introduction of secondary evidence, and the court did not err in declining to allow the doctor to read to the jury what he claimed was a copy of the alleged prescription. It appears that the prescription was in a drug store in the city of Columbus, in the state of Georgia. The trial of this defendant occurred in Russell county, Ala., just across the river from the aforementioned city. The fact that the prescription was in an adjoining state did not render the secondary evidence of its contents admissible. It does not appear that any effort was made to obtain the written prescription by deposition, nor was it shown that it could not have been obtained by that means, had the appellant attempted so to do.

[17] Charge A was properly refused. This charge was not predicated upon the evidence. This identical charge has been condemned in the cases of Davis v. State, 188 Ala. 59, 66 So. 67 (ninth headnote), and Edwards v. State, 205 Ala. 160, 87 So. 179 (ninth headnote). See, also, Green v. City of Demopolis, 20 Ala. App. 115, 101 So. 529 (cases cited on rehearing).

[18] Refused charge B was condemned by the Supreme Court in Ex parte State ex rel., etc.,. 213 Ala. 390, 104 So. 773. The court holding that said charge was properly refused for two separate reasons:

"(1) It lays too ·great stress on the individual views of jurors, thus tending strongly to discourage that free consultation after which a jury of twelve may be expected to reach an agreement on matters severely contested; and (2) it permits each juror to define a reasonable doubt according to his individual, it may be idiosyncratic, view, whereas the definition of reasonable doubt, to what extent it may re-quire or admit of definition, is a matter for the court."

[19] Charge D was fully covered by given charge E.

We have discussed all of the propositions so ably argued in the brief filed in appellant's ,behalf, and find no merit in the insistences of error in any of the rulings of the court. Mindful of the duty enjoined upon us by statute, we have in addition searched the record ; it is without error.

The oral charge given by the trial judge was full, fair, able, and complete. The record convinces us that the appellant had a fair trial, and we discover no reversible error. . The judgment of conviction appealed from must therefore be, and the same is, affirmed.

Affirmed.