186 So. 574

## RICHARDSON v. STATE.

### 6 Div. 248.

Court of Appeals of Alabama.

June 30, 1938.

Rehearing Denied Oct. 4, 1938.

Reversed After Remandment Feb. 7, 1939.

A. A. Carmichael, Atty. Gen., and Wm. H. Loeb, Asst. Atty. Gen., for the State.

Bealle & Mize, of Tuscaloosa, for appellant.

BRICKEN, Presiding Judge.

The indictment charged the defendant with the offense of robbery; specifically, that he "feloniously took two five dollar bills, two one dollar bills, and one twenty dollar bill, lawful paper money of the United States of America, commonly called 'greenback,' of the value of Thirty-two & 00/100. ($32.00) dollars, the property of Will Richburg from his person and against his will by violence to his person or by putting him in such fear as unwillingly to part with the same," etc.

Before entering upon the trial the defendant interposed a demurrer to the indictment based upon two separate and distinct grounds: (1) "Said indictment charges this defendant with no offense against the laws of the State of Alabama; (2) It is not alleged or shown that the money alleged to have been taken was lawful currency of the United States of America."

In our opinion the indictment was sufficient, hence there was no error in the action of the court in overruling the demurrer thereto.

The main witness for the State, and upon whose testimony the State relied principally for a conviction, was Will Richburg, the alleged injured party. The record shows that this witness was an aged negro, and that the defendant was of the same race, though many years younger. That on the day in question these two persons, known to each other for a long time, met in the City of Tuscaloosa, and went over into the "quarters," a negro settle-

ment, and remained together for a considerable length of time, during which it is contended the alleged offense was committed. There appears no dispute in the evidence that these two parties finally had a difficulty, but a very divergent insistence upon the part of these participants as to the details of said difficulty is disclosed.

Richburg's statement as to the occurrence complained of was in substance that the defendant said "lets walk across over there in the quarters, and I just walked on and after we got over there we stayed a while, and I told him I believed I would go back to town, and he said wait a while, that he was going on back, and I said I was going now. We stayed there a while and kept arguing, and I said, I will go on, and started to walk and he struck at me and knocked out my teeth. When I come to myself I did not see him no more." He stated, that the money he claimed to have lost was in his pocket ten or fifteen minutes before then. He further stated: "I did not have my money when I got up; my handkerchief was on the ground; I have not seen my money since then. I looked on the ground and looked in all my pockets." On cross-examination he denied that he was drunk on that occasion, and stated, "I did not drink anything but a bottle of beer. I did not pull my money out in front of him. I missed my money when I come to myself." He also testified other persons were present at the time, and the closest person to him when he was hit was within a few feet of him, and stated he did not know who he was, and also, that he didn't know any of the rest of them at all. He stated, "There were not a lot of people there when I had the fight." He never testified that the defendant took his money, and no person connected with this case saw either of these parties with the money. The indictment which was found upon the testimony of this witness described the alleged missing money as being "two five dollar bills, *two* one dollar bills, and one *twenty dollar bill.*" On the stand he testified that the money he had consisted of *two ten dollar bills,* two five dollar bills, and *five* one dollar bills. As will be noted there was a variance as to the description of the money in the indictment and in the testimony given by Richburg on the stand.

The testimony of the defendant and his numerous witnesses was in sharp conflict with practically every statement testified to by Richburg. All of them testified that Will Richburg was drunk and staggering, and some of them said the defendant was also drunk. The two police officers who testified for the State and who saw Richburg within a short time after the difficulty stated: Will Richburg had been drinking, and that they could smell it easily. The fight between the parties happened at the home of witness Will Harvel who saw the entire transaction. He testified, among other things, as follows:

"My name is Will Harvel, and I live at 401—20th Avenue. The defendant's sister lives over on 17th Street and 29th Avenue. I was living in the same house back some months ago when this man here and the defendant were there. My family and I live in one part of the house and the defendant's sister and her family lived in the other part. I remember the day the defendant and Will Richburg came there together. When they first came there, they came and knocked on the door and I was in my room, and I come to the door and told him (the defendant) his sister had not come from work. Both of them was together, and Red said, 'We will be back,' and they went up the street and after a while they come back, and they knocked on the door and I went to the door, and both of them was drunk, I would say they were drunk; and I said, 'You all is drunk, why don't you go somewhere and sit down, because you are drunk?' Red went and lay down on the porch and that fellow (Will Richburg) sat down in the fork of a tree, and I was standing on the porch, and he went to vomiting, and he felt in his watch pocket, and he said, 'Somebody got my money,' and asked me if I had it, and I said, 'No, I never saw you before,' and he said 'Red got it,' and he asked him and said, 'You got my money,' and Red said, 'I have not,' and he pulled him by his feet off the porch, and they looked like they was going to fight, and I took them by the arm and told them to go off, and they went out in the street and began to fight, and Red got the best of him, and Jefferson come by and took Will Richburg off."

There was other evidence of like import.

Pending the trial numerous exceptions were reserved to the rulings of the court, many of which have been assigned as error. The assignment of errors contain 82 separate and distinct grounds.

The verdict of the jury was: "We, the jury, find the defendant guilty of assault with intent to rob as charged in the indictment." By this verdict the defend-

ant was acquitted of the offense of robbery, and was convicted of the lesser offense included in the main charge. The court sentenced him to serve an indeterminate period of imprisonment in the penitentiary of not less than four nor more than five years.

 It is true, as insisted, that the verdict of the jury was not responsive to the testimony, for the testimony of Richburg, upon which this conviction rested, tended to show that he had been actually robbed of his money, a completed offense; and it may be true, as further insisted the conviction of defendant for the lesser offense was an indication that the jury entertained sufficient doubt of his guilt to preclude his conviction of the offense as charged, but convicted him anyhow of the lesser offense upon general principles, and not upon any evidence in the case. In this connection the jury acted within its province, and this court is without authority to declare otherwise. The trial court charged the jury on this point as follows: "If you have a reasonable doubt, arising out of the evidence or the lack of it, as to whether the defendant got the money; but if you are satisfied by the evidence beyond a reasonable doubt that the defendant did assault the witness, Will Richburg with intent to rob him, then you would find him guilty of assault with intent to rob under this indictment." The jury acted upon and followed the foregoing instructions, thus exercising their exclusive right so to do. Courts, appellate or otherwise, may not substitute themselves for the juries who are the sole judges of controverted facts, and of the probative force and effect of the evidence in every case submitted to them.

 In our case of Chiles v. State, 26 Ala.App. 358, 159 So. 700, this court said (page 701):

"The law contemplates and provides that every person charged with crime shall have a fair and impartial trial, free from error calculated to injure his substantial rights. In Patterson v. State, 202 Ala. 65, 79 So. 459, 462, the Supreme Court said: 'The guilty, as well as the innocent, have a right to be tried in accordance with the law of the land. The innocent ought not to be punished, and the law does not intend or provide that they shall be punished; and as to the guilty, the law provides that such shall not be punished except in the mode and manner provided by the law.' "

The foregoing statement is applicable to the case at bar, and to all criminal prosecutions. In this case we have carefully read and attentively considered the entire evidence in this case and are clear to the opinion that this appellant (defendant below) has not been accorded the fair and impartial trial, free from prejudicial error, to which, as stated, he was entitled.

 It appears from the record, the court, over objections and exceptions, permitted the State to offer evidence of two separate and distinct conversations between Richburg (the alleged injured party), and the mother of the defendant in his absence. The first of these conversations was two or three weeks after the alleged commission of the offense, and the second conversation, Richburg stated, was at a later time, two or three months before the time of the trial. As to the latter conversation Richburg testified: "Eventually it rocked on and one Saturday she come over there, and she said as soon as she got hold of some money she would pay it, and that was two or three months ago. That was about all of the conversation." The testimony as to these two conversations with defendant's mother, in the absence of the defendant, was very injurious, prejudicial and hurtful, and the numerous exceptions reserved, in this connection, to the rulings of the court, were in point, and well taken, as error prevailed in each of these many rulings. It is apparent the court allowed the Solicitor, on redirect examination of Richburg, to go into this inquiry upon the theory that the defendant on cross-examination of this State witness, adduced or brought out some part of the conversation between the witness and defendant's mother, and therefore the State was entitled to inquire as to the whole conversation. That, of course, is the correct rule of evidence and has consistently been so held in innumerable decisions of the appellate courts of this State. But upon examination we find that nothing appeared in the cross-examination of the State witness by defendant to justify the invoking of said rule. All that appears of record in this connection on cross-examination of State witness is as follows: "I know where the defendant's home is at Reform. I went over there two or three weeks after it happened on a Monday Morning. I did not tell his mother I wanted him to come and see me. I did not tell her that I was coming over here to withdraw this charge. I did not tell her that I knew Red Rich-

ardson did not take my money. She was not up, but the sun was up. I knocked on the door, and she got out of bed and came to see what I wanted."

The foregoing is analogous to and brings this case within the holding of Hamlett v. State, 19 Ala.App. 218, 96 So. 371, where the court said (page 373):

"On the cross-examination of the State's witness McQueen, defendant laid a predicate by asking him if he did not have a certain conversation at a certain time and place with one Cleve McElvaine. This the witness denied. On redirect examination this witness was permitted, over the timely objection and exception of defendant, to detail a conversation between himself and McElvaine which witness said did take place. No part of any conversation· had been brought out by the defendant on cross-examination. * * * The conversation between the witness and McElvaine, in the absence of defendant, and not being a part of the res gestæ, was hearsay, and as such was inadmissible."

As to the second conversation above referred to there was no semblance of inquiry by defendant on cross-examination of Richburg. These numerous erroneous rulings necessitate the reversal of the judgment of conviction from which this appeal was taken.

The defendant testified as a witness in his own behalf and was therefore subject to impeachment. Not having put his general character in issue the State could only impeach him as to truth and veracity. Some of the State witnesses so testified, and on cross-examination by defendant testified also to his alleged other traits of character which evidence was highly prejudicial to defendant; but this evidence having been brought out, and injected into the case, by the defendant, and no ruling of the court invoked we are not authorized to declare the court in error in this connection. Baugh v. State, 215 Ala. 619, 112 So. 157.

We are of the opinion the court· erred in overruling defendant's motion for a new trial upon several of the grounds upon which the motion was predicated. As the case must be reversed for other reasons we pretermit a detailed discussion of this proposition.

Reversed and remanded.

## After Remandment.

In our original opinion, in this case, we undertook to make it clear, but evidently failed to do so, that the trial court, over proper objection and exception by defendant, allowed the State to prove in detail a conversation had by its principal witness with the mother of defendant in the absence of defendant, and that no proper predicate had been laid for such testimony as shown by the record. We there stated, and now reiterate, that the record shows, there were two separate and distinct rulings of the trial of this nature. The first conversation was shown to have been had a short time after the alleged commission of the offense, and as to that conversation in the absence of defendant; the State witness on cross-examination by the defendant merely denied he had had such conversation at the time and place inquired about by defendant. As we construe the opinion of the Supreme Court, on certiorari, 186 So. 580, the making of the inquiry, and a flat denial by the witness that he had had the conversation, was a sufficient predicate to authorize the State witness on redirect examination, to testify and relate in detail what the mother of the defendant, in the absence of defendant, did say to the witness as to her paying him the money he claimed to have been taken away from him. That this testimony was highly prejudicial is beyond question. In this connection the defendant, as stated, merely propounded the inquiry to witness, and he, witness, flatly denied having had any such conversation with the mother of defendant. There was no effort or attempt by defendant to offer proof to the contrary in any manner. If the Supreme Court, by its majority opinion, intended to hold that the foregoing was a sufficient predicate to allow the witness, over objection and exception, to go into detail as to his version of a conversation he did have with the mother of defendant, under this status, this court must, perforce, by virtue of the Statute, be governed by such holding. Section 7318, Code 1923. We have always understood the rule in this connection to be, that where a witness, on cross-examination, is asked touching a certain declaration out of court for purposes of impeachment, and he makes a simple denial, the opposing party is not entitled to inquire what he did say on the occasion, until or unless the impeaching party has offered testimony that the witness did make such declaration.

438

In which event the witness is then entitled to tell what he did say in rebuttal or explanation of the impeaching evidence. Our understanding, thus stated, is based upon innumerable opinions of the Supreme Court of this State, and also of this and other courts. In Martin v. State, 119 Ala. 1, 25 So. 255, 257, the Supreme Court, Mr. Justice Head speaking, said: "The testimony of state witness Higgins of the conversation had between him and the defendant's father was hearsay, and ought to have been rejected. The previous effort of the defendant to impeach the witness by asking him if he did not, at that time and place, make a particular statement, contradictory of what he had testified on the stand, and the simple denial of the witness that he had made such a statement, not going into the supposed conversation at all, did not authorize the state to prove the statements really made by the witness in the conversation. The time for the state to consider what further right it had to bring out what the witness had said in the conversation was not until the introduction by the defendant of other impeaching proof, showing that he did make the contradictory statement inquired about. Having denied that he made such statement, he stood unimpeached, until by evidence introduced by the defendant, which the jury believed, it was shown that he did make it. The state could not support the character of its unimpeached witness in that way. The court erred in allowing the evidence." For other cases of like import, see Key Numbered Digest System, Criminal Law, &lt;&copy;&gt; 417(2).

 The record discloses, that some months subsequent to the time of the first alleged conversation, above referred to, the trial court, over timely objection and exception, allowed the State to show by the same witness, a detailed statement of another conversation he, the witness, claimed to have had with the mother of defendant, in the absence of the defendant. As to this latter conversation there was no effort upon the part of defendant to lay a predicate, nor any reference whatever made by the defendant to any such conversation; hence this ruling of the trial court was error which of itself necessitates the reversal of the judgment of conviction from which this appeal was taken. It is axiomatic that conversations not occurring in defendant's presence or hearing are hearsay pure and simple. Mays v.

State, 218 Ala. 656, 120 So. 163, 164. In the foregoing case, Mr. Chief Justice Anderson, for the court, said: "The trial court erred in permitting the witness Floyd Calhoun, over the objection of the defendant, to testify as to a conversation with his father and also with Oscar Martin. These conversations did not occur in the presence of the defendant, and were purely hearsay." Hamlett v. State, 19 Ala.App. 218, 220, 96 So. 371; Rikard v. State, 15 Ala.App. 497, 73 So. 992; Edelman's Case, Edelman v. City of Gadsden, 16 Ala.App. 381, 77 So. 914; Barber v. State, 23 Ala. App. 584, 129 So. 492; Harris v. State, 17 Ala.App. 542, 86 So. 144; Campbell v. State, 18 Ala.App. 219, 90 So. 43; Presley v. State, 26 Ala.App. 280, 158 So. 765; Scott v. State, 22 Ala.App. 383, 115 So. 855; Brewer v. State, 23 Ala.App. 116, 121 So. 689; McMahan v. State, 21 Ala.App. 522, 109 So. 553; Davis v. State, 20 Ala. App. 131, 101 So. 171.

 The court erred in allowing the State to offer evidence tending to show that the defendant attempted to compromise the case with the alleged injured party Richburg. Timely objections were interposed, and exceptions duly reserved in this connection. Spinks v. State, 14 Ala.App. 75, 71 So. 623; Bedingfield v. State, 24 Ala.App. 398, 135 So. 656; Sanders v. State, 148 Ala. 603, 41 So. 466. In Spinks' Case, supra, this court, through Judge Brown, said: "The general rule is that offers of compromise or to make restitution for property the subject of a crime by the accused is not admissible either for or against him." [14 Ala.App. 75, 71 So. 624.] The foregoing is peculiarly applicable to the case at bar. Here, the trial judge, over objection and exception, allowed the State witness Richburg to testify: "I saw Charlie Richardson after then in Reform (alluding to the time of the alleged commission of the offense), and when he was talking to me he asked if I would come over here and talk with the law; and if they would compromise that matter, he would give me my money, etc."

In Bedingfield's case, supra, this court said: "Over timely objections and exceptions the court in numerous instances upon this trial allowed the state to inquire and witnesses to testify relative to alleged efforts upon the part of the accused to compromise and settle this case. Each of these rulings was error. The decisions of this state are uniform to the effect that efforts to compromise cannot be proved as

admissions against the party making them. This rule applies to criminal cases as well as to civil. Vowell v. State, 20 Ala.App. 322, 101 So. 780, 782; Wilson v. State, 73 Ala. 527; Martin v. State, 2 Ala.App. 175, 56 So. 64; Stinson v. State, 3 Ala. App. 74, 57 So. 509; Spinks v. State, 14 Ala.App. 75, 71 So. 623; Sanders v. State, 148 Ala. 603, 41 So. 466; Graham v. State, 23 Ala.App. 331, 125 So. 200." [24 Ala. App. 398, 135 So. 657.]

In Sanders case, supra, the Supreme Court held it was not competent to show that the defendant had offered money to prosecutrix's foster father to quash the proceedings.

Appellant contends that the court erred in allowing certain State witnesses to testify as to the bad character of his witnesses without first having properly qualified such witnesses so to do. The proper mode of examining witnesses as to character, is to inquire of the witness if he knows the general character of the person in the neighborhood or community in which he resides, and if he answers affirmatively, to inquire whether that is good or bad. From the record it appears that some of the witnesses were permitted, over objection and exception, to testify as to the character of some of the witnesses for defendant without having been qualified as required. The insistence in this connection is therefore well taken and is sustained.

Upon the motion for a new trial there was ample evidence offered to require the granting of same by the court and we hold in failing to do so there was error.

For the numerous errors indicated the judgment of conviction from which this appeal was taken will remain reversed and remanded.

Reversed and remanded.