SAMUEL DOSS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon November 4, 1895.*

1. LARCENY—*obtaining money to bet on sham race is larceny.* Obtaining possession of money for the pretended purpose of making a wager for the owner's benefit on a sham race, which is so carried out that the owner is declared to have lost the wager, constitutes larceny, when the owner did not intend to part with the title, but merely with the possession of his money, and it was obtained from him with intent to convert it.

2. VERDICT—*need not state age of defendant.* A verdict of conviction need not state the age of a defendant where the whole evidence tends to prove he is over twenty-one.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. O. A. HARKER, Judge, presiding.

A. B. GARRETT, and W. A. SCHWARTZ, for plaintiff in error.

MAURICE T. MOLONEY, Attorney General, T. J. SCOFIELD and M. L. NEWELL, of counsel, and JOHN M. HERBERT, State's Attorney, for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

The plaintiff in error was convicted at the January term, 1895, of the circuit court of Jackson county of the larceny of $530, the money of one John Devine, and sentenced to imprisonment in the penitentiary for the term of five years. The evidence showed that he went to Chester some time in November, 1894, where he got acquainted with Devine, a saloon-keeper, and that after an acquaintance of about two weeks Devine put $50 in his hands to bet on a foot race which Doss said was to come off at Pinckneyville, but which, for some reason, was put off and run at Murphysboro on December 4. Devine went with Doss to Murphysboro, and on Doss'

representations that they would bet the money on one Langdon, who Doss said was a very fast runner and would be sure to win, Devine placed $480 more in the hands of Doss to put up on the race. Doss said he would have to put up $600, but that they would so fold the $530 as to count $600. They did so and pinned it together. At Murphysboro they met Langdon and Simpson, who were the runners, and one Kiplinger, who acted as stake-holder, and one Walker or Hughes. The whole party proceeded to the place where the race was to be run, and some envelopes were placed in Kiplinger's hands, which he testified he did not open but that Doss put only $20 in his hands, and the evidence fails to show that any money was put up against the money of Devine. The race came off, and Simpson, not Langdon, won. Kiplinger turned over the envelopes to Simpson, and the parties separated, Doss professing to be very angry with Langdon for losing the race. Doss and Kiplinger met outside of town, where the latter was arrested, but Doss ran away and escaped. Henry Lipe testified that he was driving along the road about two miles south-west of Murphysboro when the defendant and another man came up; that the defendant had been running, and had a handkerchief with considerable money tied up in it, and said to witness, "We have skinned a couple of ducks;" that defendant gave the other man a couple of bills from the roll and told him to go back, and then got in the wagon with witness and rode with him about three miles, and told him he was making his way to the river, where he wanted the witness to take him. Witness declined, but gave him the names of others on the road. He found a man who took him to the river, for which he paid five dollars, and to whom he made statements somewhat similar to those made to Lipe. Kiplinger testified that he got $40 of the money, and that Doss told him he had given Langdon $85 and Simpson $25. Kiplinger was in jail for the same offense, and had previously testified to a contrary state

of facts. Plaintiff in error testified that he bet Devine's money in good faith and lost it, together with $200 of his own money, and other evidence was given tending, in some degree, to exculpate him, but the jury were doubtless satisfied, from the evidence, (and in this we think they were fully justified,) that the foot race and pretended wager were a mere sham, gotten up and manipulated to swindle Devine out of his money, and that plaintiff in error obtained the money in question from Devine, not for the purpose of really wagering it on the result of the race, for Devine, but to feloniously convert it to his own use—to steal it.

The jury were warranted in finding that possession of the money was fraudulently obtained by plaintiff in error, with the felonious intent, on his part, when he received it, to convert it to his own use, and that Devine, when he gave him the money, intended to part with his possession merely, and not with his title, relying on plaintiff in error to dispose of it, as agreed upon, for his, Devine's, benefit. It is the settled law of this State that this offense is larceny. (*Murphy* v. *People,* 104 Ill. 528; *Kibs* v. *People,* 81 id. 599; *Stinson* v. *People,* 43 id. 397; *Welsh* v. *People,* 17 id. 339; *Johnson* v. *People,* 113 id. 99; Moore on Crim. Law, sec. 496.) Analogous rulings elsewhere may be found in the cases referred to in *Murphy* v. *People, supra.*

The jury were fairly instructed as to the law of the case, and plaintiff in error has no just cause to complain that his rights were not fully protected by the court.

It is insisted that the conviction was erroneous because the jury did not find, in the verdict, the age of the accused. No proof was introduced on the trial to show that he was under twenty-one years of age, but the evidence all tended to prove that he was considerably over that age. It was not necessary for the jury to find his age in their verdict. *Sullivan* v. *People,* 156 Ill. 94.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*