15 So.2d 600

### REYNOLDS v. STATE.
#### 6 Div. 941.

Court of Appeals of Alabama.
June 30, 1943.
Rehearing Denied Aug. 10, 1943.

Beddow, Ray & Jones, of Birmingham, for appellant.

260

Wm. N. McQueen, Acting Atty. Gen., and Geo. C. Hawkins, Asst. Atty. Gen., for the State.

RICE, Judge.

Appellant was convicted of the offense of grand larceny, and his punishment fixed at imprisonment in the penitentiary for the term of four years.

The State's testimony was such that from it the jury had a right to find—as their verdict indicates they did—that appellant, together with one William, alias "Red", Hallmark, one Watson, and one Graves, or perhaps one Dan McCabe, alias Graves, with a preconceived fraudulent intent to steal same, conspired to procure the delivery to himself or one of the others of his co-conspirators by Mrs. W. D. (Viola) Purvis, of a sum of money totalling $5,250, and that he or one of said others, then converted to the use of himself or of someone of them, the entire amount so delivered.

It was the theory of the State, amply supported by its testimony, that while the money was procured from Mrs. Purvis (now Mrs. Sanders) on three separate occasions, each occasion was but a part of the general plan to procure the total amount named in the verdict of the jury.

Mrs. Purvis testified that the appellant, hitherto unknown to her, called her on the telephone, representing himself to be an agent of the Metcalf Realty Company, and wanting, he said, to sell her a house. After several more telephone conversations pertaining to such a transaction, the witness and defendant (appellant) had an engagement, which they kept in town and on which they discussed real estate.

She testified that about a week or two later she and defendant, together with William ("Red") Hallmark and one Miss Virginia Cook, went to Greenwood's Cafe for "dinner" (or supper). While there a man introduced to her as Watson, whom witness had never seen before, but who appeared to be a friend of defendant's (appellant's), joined the party; and, in the course of the conversation said he was working for Graves (but who, really, according to the State's testimony, was McCabe).

Witness Mrs. Purvis said Watson told defendant and Hallmark that Graves had beat him out of several thousand dollars in a deal, and if they would go to Graves' room and gamble Watson would see that they won, on condition that they would split with him.

Witness Mrs. Purvis testified further that the party went to Graves' room in the Thomas Jefferson Hotel, and that defendant and Hallmark won—or said they won—six thousand dollars. But that Graves refused to pay them unless and until they could evidence their own ability to have paid six thousand dollars if they had lost. Defendant (so Mrs. Purvis testified) stated to Graves that he could have given a check in that amount, but Graves replied that he would not have taken a check and that it would be necessary for defendant to show him cash. At this stage defendant, witness, and the other couple left. Defendant (appellant), according to witness (to so denominate Mrs. Purvis from here on), stated that he had twenty-nine hundred dollars which he had left in the possession of a

friend, and which he could get the next morning. Defendant then asked witness if she "would put up the thirty-one hundred dollars, you know, so that they could see it and he would know that he had the money." In other words, witness' testimony was plainly to the effect that defendant asked her to turn over to defendant the sum of thirty-one hundred dollars for the sole purpose of allowing defendant to display it before Graves to show that he (defendant) could have paid off in the event he had lost.

She testified—and indeed this is not denied by defendant—that she drew out of the bank and turned over to defendant thirty-one hundred dollars in currency.

Despite the continuous promises of appellant and his co-conspirators to return the said thirty-one hundred dollars to Mrs. Purvis, such was never done. Shortly thereafter one of the co-conspirators informed Mrs. Purvis that her money was forthcoming except for a slight obstacle which could be overcome by her advancement of three hundred and fifty dollars. The evidence showed, and the jury found, that she advanced this second sum for the sole purpose of, and only to be used for, the repayment of her money. This failing, in a final effort to realize something on the numerous promises, Mrs. Purvis acceded to appellant's request for the advancement of eighteen hundred dollars to be used for the sole purpose of discharging a lien on certain property allegedly owned by appellant, which property, he promised her would be sold when the lien thereon was discharged, and the proceeds from such sale used to repay her in full for the money advanced. The State submitted these facts to the jury on the theory that they constituted a scheme to procure Mrs. Purvis' property pursuant to a single sustained criminal intent.

Further testimony tended to show that defendant had never been employed by Metcalf Realty Company; that Graves was not who he was represented to be; that the two amounts procured subsequent to the delivery of the original thirty-one hundred dollars were not used for the purposes for which they were ostensibly obtained; and that the whole scheme was, inferentially, a fraud and a hoax from beginning to end.

Possibly, even probably, we did not mention every item of the testimony which the jury could use in forming its conclusion that a conspiracy was shown. But the necessary items were there present; and

the rules for their use have nowhere been found set out more clearly, according to our view, than in the opinion in the case of Jones v. State, 174 Ala. 53, 57 So. 31, to which we referred in our opinion in Kelly and Lockett v. State, ante, p. 194, 13 So.2d 691.

As for the contention of appellant's able counsel that the circumstances shown to surround the delivery of the witness Mrs. Purvis' money to appellant could not cause him to be guilty of larceny—even when the jury believed her story beyond a reasonable doubt—we think the law governing will be found in the quotations, with citations, which follow, to wit:

In American Jurisprudence, Vol. 32, pp. 915 and 916, it is said: "It is a well-settled general rule that the requirement of a felonious taking against the will of the owner is sufficiently met, and that larceny is committed, where a person intending to steal another's personal property obtains possession of it, although by or with the consent of the owner, by means of fraud or through a fraudulent trick or device, and feloniously converts it pursuant to such intent." There is cited in support of the said quotation the Alabama cases of Ex parte Economu, 211 Ala. 237, 100 So. 85, citing R.C.L.; Illinois Auto Ins. Exch. v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A.L.R. 734; Verberg v. State, 137 Ala. 73, 34 So. 848, 97 Am.St.Rep. 17; Frazier v. State, 85 Ala. 17, 4 So. 691, 7 Am.St.Rep. 21.

In the very helpful note found in 26 A. L.R. at page 381 it is said: "Larceny by trick or fraud is distinguished from the crime of obtaining property by false pretense, in that, in the latter offense not only the possession, but the title, passes. This distinction was stated in Com. v. Barry, 1878, 124 Mass. 325, as follows: 'If a person honestly receives the possession of the goods, chattels or money of another upon any trust, express or implied, and, after receiving them, fraudulently converts them to his own use, he may be guilty of the crime of embezzlement, but cannot be of that of larceny, except as embezzlement is by statute made larceny. If the possession of such property is obtained by fraud, and the owner of it intends to part with his title as well as his possession, the offence is that of obtaining property by false pretences, provided the means by which they are acquired are such as, in law, are false pretences. If the possession is fraudu-

lently obtained, with intent on the part of the person obtaining it, at the time he receives it, to convert the same to his own use, and the person parting with it intends to part with his possession merely, and not with his title to the property, the offence is larceny.'

"It is well settled that where a person by trick or fraud, obtains possession of property, intending at the time of obtaining the property to convert it to his own use, and does so convert it, the fraud is the equivalent of a felonious taking, and the offense is larceny."

Or as our own Supreme Court said: "At common law, if one secures the possession of a chattel, not the title thereto or a special property therein, by or with the consent of the owner, through a fraudulent trick or device, then intending to steal the chattel, it is larceny." Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., supra [207 Ala. 265, 92 So. 430, 24 A. L.R. 734].

And the following quotation from 17 R.C.L. at page 13 is apt, viz: "If a person with a preconceived design to appropriate property to his own use, obtains possession of it by means of fraud or trickery, the taking under such circumstances amounts to larceny."

But of course it must always be kept in mind that there is a clear distinction between obtaining merely the *possession,* and obtaining *both* the possession and the title. In this *latter* case, the culprit could not be guilty of larceny. Murchinson v. State, 30 Ala.App. 15, 199 So. 897. But in the former he *could*—and would. Savage v. State, 15 Ala.App. 168, 72 So. 694.

However, we think the following quotation from American Jurisprudence, Volume 32, page 919, also has direct application, to wit: " * * * It is recognized that there are exceptions to the doctrine that larceny by trick or fraud is not committed where the owner intends to part with title as well as possession. Even though the owner is induced to part with his title through the fraudulent procurement of one acting pursuant to a felonious design to steal, there is authority for the view that if such procurement of the title is ostensibly only for the purpose of facilitating the disposition of the property on behalf of the owner according to his directions, which include a return of the proceeds to him, a felonious conversion of such proceeds by the perpetrators of the fraud may constitute larceny, since the owner has not parted with the right to the proceeds."

To our minds the law as just quoted obtains in our state.

The Supreme Court of Alabama in the case of Frazier v. State, 85 Ala. 17, 4 So. 691, 7 Am.St.Rep. 21, sustained a conviction for larceny upon evidence showing that the defendant, with a preconceived felonious intent, shot and killed a hog in a pine thicket, covered it with pine tops, and procured the consent of the owner to have it, such consent being procured upon the misrepresentation that the hog had spoiled. In the case at bar appellant, or his co-conspirators, obtained the money upon the misrepresentation that it was to be used for the sole purpose of facilitating the return of money previously advanced by Mrs. Purvis.

The prevailing authorities evidence the rule to be that the offense of larceny is not committed unless title is retained *or unless title and possession are transferred with the binding condition that the money or property is to be used for a specified purpose.* In support of this principle reference is made to the cases of Boswell v. State, 1 Ala.App. 178, 56 So. 21; Illinois Automobile Insurance Exchange v. Southern Motor Sales Company, 207 Ala. 265, 92 So. 429, 24 A.L.R. 734; McKinney v. State, 12 Ala.App. 155, 68 So. 518; People v. De-Graff, 127 Cal. 676, 60 P. 429.

Another line of cases holds that if a defendant, with a design to steal property obtains possession of it by fraud the taking is larceny, for the reason that, as the fraud vitiated the transaction and left the title in the original owner, he still retained a constructive possession of the goods, and the conversion of them by the defendant is such a trespass to that possession as makes it larceny. Boswell v. State, supra; Holbrook v. State, 107 Ala. 154, 18 So. 109, 54 Am.St.Rep. 65; Mitchell v. State, 2 Ala. App. 147, 56 So. 56; Williams v. State, 165 Ind. 472, 75 N.E. 875, 2 L.R.A.,N.S., 248; State v. Bickel, 7 Mo.App. 572; Martin v. State, 123 Ga. 478, 51 S.E. 334; Doss v. People, 158 Ill. 660, 41 N.E. 1093, 49 Am. St.Rep. 180; Loomis v. People, 67 N.Y. 322, 23 Am.Rep. 123; Taylor v. State, 64 Tex. 157, 141 S.W. 949; 36 C.J., pages 777, 778.

We think the jury had a perfect right to find in the instant case that Mrs.

Purvis was induced by a trick or fraud, conspired in by appellant, Hallmark, Watson, and Graves, to part with those two amounts of her money procured subsequent to the delivery of the principal sum of thirty-one hundred dollars upon the express promise that they were to be used for the specified purpose of facilitating the return of prior advanced money, and that appellant, together with his co-conspirators, intended all the while to convert it to his or their own use, and did so convert it. Upon such findings appellant was guilty of larceny. Authorities, supra.

Of course, as to the item of thirty-one hundred dollars it is plainly apparent she never parted and never intended to part with any other than its mere possession.

■ If indeed there was a purpose on the part of the appellant, with his confederates—if the jury so found, as the evidence authorized—to defraud Mrs. Purvis out of the particular total sum of money procured from her, it was immaterial, and without illegal harm to appellant, that the testimony showed that a part of the money was obtained at one time by one co-conspirator, and a part at another by another. See Jones v. State, supra; and Carl v. State, 125 Ala. 89, 28 So. 505; and Brown v. State, 30 Ala.App. 27, 200 So. 630.

The cross examination of appellant's witness about which complaint is made was a matter resting largely within the discretion of the trial court. And we are far from persuaded that any abuse of that discretion is shown.

■ The Solicitor prosecuting for the State overstepped, it is true, the bounds of legitimate argument in referring to other cases tried by counsel representing appellant below. But we are fully persuaded that any harmful effect done by said argument was completely eradicated by the prompt measures taken by the trial judge. There was no necessity to declare a mistrial.

It would seem that what we have said pretty well covers the points stressed most for error by appellant's resourceful counsel in their two briefs filed here. In no ruling or action by the trial court do we find error for which the judgment should be reversed.

The argument that the verdict and judgment should have been set aside, and a new trial awarded defendant (appellant) seems to us to have its answer in the words of the learned trial court, which we quote from his oral charge to the jury trying the case, to wit:

"Now, the testimony of the State in this case, and the contention of the State in this case is—or rather I should say the testimony of the state tends to show, and the contention of the state is, that this defendant, with one Hallmark, and a man named Watson, and a man named Graves, I believe, entered into a conspiracy to defraud this woman of her money; that they pretended to engage in a dice game, and pretended that the defendant won some money, and also pretended that the man Graves would not pay the money until the defendant showed that he had an equivalent sum of money, and by means of that trick or that fraud they induced this woman to let the defendant have this sum of money in order to help him gather up the necessary amount to be shown. Now, if that is true and by means of that trick or that fraud this woman, Mrs. Purvis, was induced to surrender to him the physical possession of the money, although the law says that the constructive possession would still remain in her, and if he obtained possession of that money in that way, by that trick, and at the same time he had an intent, a felonious intent to steal it, and you so find, and you are convinced of all that beyond a reasonable doubt and to a moral certainty then you would be authorized to find him guilty of larceny. Now, on the other hand, the defendant's testimony tends to show, and the defendant says, that nothing like that happened. He contends, and his testimony tends to show, that he and Mrs. Purvis and Hallmark and a man named Watson entered into an agreement to do some gambling with Watson's employer, named Graves, and that they were going to dupe or work a deception upon Graves, and that he did not work any trick or deception on Mrs. Purvis at all, but on the other hand she entered into this conspiracy to dupe the man named Graves. Now, if that is true, and this defendant did not work any deception or trick on Mrs. Purvis, and she voluntarily consented for him to have this money, and delivered possession of it to him then the defendant would not be guilty of any crime—would not be guilty of larceny and would not be guilty of anything else. So, gentlemen, it is up to you to say what are the facts in case. *The line of testimony on the part of the state is well defined and the defendant's testimony is well defined.* It is up to you to say which one is telling the truth. If what the defendant has testified to is true then he

would not be guilty of any crime. On the other hand, if what the prosecuting witness, Mrs. Purvis, testified to is true that she— and you are convinced beyond a reasonable doubt that she delivered her money to this man as a result of a trick or fraud that he practiced on her, and if you are further convinced that at the time he so took possession of it he had the intent on his part to steal it or to convert it to his own use, then he would be guilty of larceny." (Italics ours.)

That just simply sums the matter up. It was all a question for the jury—under instructions which we think correct.

It was intimated by counsel at the bar arguing in behalf of appellant, that nothing would ever have come of the loss by Mrs. Purvis of her money, if appellant had not been injured in an automobile accident, and turned for solace to his wife— about whom, up to that time, Mrs. Purvis said she had never heard. And he could be correct about that.

But the principles of law we have quoted hereinabove; and the right of the jury to apply them to the evidence in the way they did, would not be changed.

Maybe, under other circumstances, Mrs. Purvis would never have "gone to court" and told what happened. But if so, the net result in this case was to add appellant to that not inconsiderable number who stoutly affirm the prescience of the poet who proclaimed: "Hell hath no fury like a woman scorned!"

The case was fairly tried.

The judgment must be affirmed.

It is so ordered.

Affirmed.