21 So.2d 282

### POWERS v. STATE.

#### 4 Div. 842.

Court of Appeals of Alabama.
Jan. 23, 1945.

Rehearing Denied Feb. 13, 1945.

---

Ralph A. Clark, of Andalusia, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The indictment in this case contained four counts and designated as defendants this appellant and three other persons. Upon motion a severance was granted and this appellant, Powers, was placed upon trial.

Before entering upon the trial upon the merits of the case, the appellant made motion to quash the venire on the following grounds:

"1. That the Solicitor has written and mailed to each member of this Jury a letter Admonishing them of their duties as Jurors etc. (A copy of said letter being attached hereto and made a part of this Motion.)

"2. That said letter is calculated to influence the minds of the Jury in arriving at a just verdict in this cause."

In order that this matter may be made clearly apparent the letter referred to in the foregoing motion is here set out, and is as follows:

"Letter
"My Dear Sir:

"I notice that your name appears on the list of petit jurors for service next week, at which time criminal cases have been set for trial.

"The presence of your name in the jury box is a compliment to you as well as to the county. A competent juror does and should carry a high degree of responsibility to the community where he lives. The law requires the jury commission, composed of three local citizens appointed by the Governor, to place on the jury roll (and in the jury box) the names only of those 'male

*citizens of the county who are generally reputed to be honest and intelligent men and are esteemed in the community for their integrity, good character and sound judgment.'* Title 30, Section 21, Code of (Alabama) 1940. The aforequoted and underscored lines were in the minds of the jury commissioners when they placed your name in the jury box.

"Our system of government is largely founded on competent and adequate jury service. The willingness of competent jurors to serve, accompanied by a desire to render justice, is indeed a strong indorsement of and help to our democratic form of government which we are now fighting to preserve. However, any reasonable excuse on your part to be exempt from jury service should and no doubt will be recognized by the Court.

"A petit jury performs a very important mission in the matter of law enforcement and protection to the people of Covington county, and you should feel proud, and I believe you do, of your selection and availability to dispense justice as a petit juror. It is an honor to serve on a petit jury. The law abiding people will greatly appreciate the sacrifice you are making in rendering service to your county.

"Yours truly,
"B. W. Simmons, Solicitor."

As to the foregoing the State through its Attorney General insists that:

"The letter in evidence admittedly written by the Solicitor to the jurors summonsed for service during the week, was not grounds for motion to quash and did not fall within the purview of Section 46, Title 30, Code of 1940, reading as follows: 'No objection can be taken to any venire of jurors except for fraud in drawing or summoning the jurors.'

"See also Bell v. Terry [213 Ala. 160], 104 So. [336] 337(6); Wimbush v. State [237 Ala. 153], 186 So. 145(11).

"The court correctly sustained the demurrer and the motion to strike filed by the state in answer to said motion to quash.

"The letter was not prejudicial to the defendant. The contents of the letter were calculated to appeal to the recipient to perform jury service for the county, calling his attention to the necessity of jury service in the promotion of justice. The fine ideals of jury service for the rendition of justice in the courts of our country cannot be too often stressed by the officials of our courts. If the letter had particularized any case that was set for trial, then defendant would no doubt have been granted a continuance on proper motion, *which was not made in this case.* The Court qualified the jury as to their reaction to the letter and each juror answered that he was not prejudiced against this defendant by this letter. This poll of the jury by the court was made at the request of the defendant's counsel who has no just complaint when all the answers showed a correct attitude toward the defendant. Motion to quash was not the proper way to raise the point that the letter was prejudicial to the rights of the defendant."

The above insistence of the State is in point, and has the approval of this court. In consequence, we hold the action of the lower court in this connection to be without error.

The facts of the case as appears of record are unusual, and, as stated in briefs, are substantially as follows: "The record shows that one Charlie Faulkenberry, the defrauded victim and witness, was approached in Andalusia, Alabama, by one Arnie Watson, deceased at the time of the trial, who asked Faulkenberry if he would like some money, to which he gave an affirmative answer. The approach was made on Monday, February 27th, 1939. Thereafter on Tuesday, February 28th, 1939, the victim, Faulkenberry, and Arnie Watson, pursuant to an engagement with each other made the day before, proceeded by automobile from Andalusia to Florala, in the same county, pursuing the venture which Watson proposed the day before. While en route, Watson furnished Faulkenberry some wine having a peculiar taste, which caused the witness to develop a headache and made him feel other than normal. They arrived in Florala at a house to which Mr. Faulkenberry referred as 'his (Watson's) place', and there Watson introduced Faulkenberry to the defendant, made known to him then as Howard, and to another man introduced as Edwards and later referred to as 'Judge.' All four went into a room in Watson's house where the defendant told the witness that '* * * old Judge is the only man in the United States that can do this operation; that he had been connected with him a long time and that he was the only man in the United States that could do that operation.' Howard, according to the testimony of Faulken-

berry had been explaining and demonstrating how a one dollar bill could be run through some chemicals which removed the ink therefrom and then could be raised to a $5.00 bill. After this explanation and demonstration, Faulkenberry being satisfied that the conversion was possible, at the suggestion of the defendant and the Judge, left and came back to Andalusia with the defendant and Arnie Watson, to get some twenty dollar bills. After arriving in Andalusia, the defendant and Watson waiting in another part of the city, the witness went to the Commercial Bank and drew from his account the sum of $5200.00 in currency (twenty dollar bills), which withdrawal was verified by the introduction in evidence of the check. After this withdrawal, the witness joined the defendant and Watson and they went to Florala where they arrived the same day about an hour after he went to the bank which was 12:30. This was all on Tuesday, February 28, 1939. After the arrival back in Florala, J. W. Edwards, the 'Judge,' Watson, the defendant, and the witness again went into the Watson house at which time and place the alleged larceny was committed. It seems that the defendant, Watson, Judge and Faulkenberry, at the suggestion of Edwards, proceeded to rub the 'marks' off of the currency which Faulkenberry furnished. The witness, Faulkenberry, at the time was nauseated and later left the room for a few minutes. While he was in the room, 'Mr. Powers and Judge said that in order to make the chemicals right it had to be first wet in plain water, the chemicals would be too strong and might ruin the bills, so the defendant and Arnie Watson took the money, all of it, and went in the back room where there was a sink.' Witness was sitting where he could see them. After wetting some of the money, they brought it back and put it on the table. The defendant and the Judge claimed, so the witness, Faulkenberry, said, that the money would have to be put in a press, described and introduced in evidence, and left over night to make good impressions on some plain paper which was sandwiched between the bills in the press. According to the witness, Faulkenberry, the defendant, Watson and the Judge told him, 'you take no chances with your money. You take the clamp (press) with you and keep it yourself,' and, 'tomorrow you come back down here and bring that with you and we will unload it and have the impressions, and we will get some one dollar bills and

clean them off and switch these impressions of the twenties to the ones.' About 4:00 or 4:30 o'clock, witness Faulkenberry came back to Andalusia with the press, which he left in the back of his car, locked, but his suspicions were aroused. He went back to Florala with the press in the paper bag, which was unopened, to find that the defendant and the Judge had left. Witness Ila Harrison, after identifying the Judge and the defendant, testified that, looking through a door knob hole from a point in another room, she saw the defendant, Edwards, Watson and Faulkenberry around a table, and while Faulkenberry was out of the room, she saw the Judge remove the money from the table, or some of the money, from the table and put it in a bag behind him. When Faulkenberry arrived in Florala, he examined the press to find that he had only three twenty dollar bills sandwiched between the white paper. The $5200 plus was gone. Witness said he put $5280.00 on the table."

The trial resulted in the conviction of this appellant of the offense of grand larceny. The first count of the indictment charged defendants with grand larceny.

One of the principal insistences of appellant is that under the facts of this case the accused could not be convicted of grand larceny. This insistence is untenable. Our recent case of Reynolds v. State, 15 So.2d 600, 602, certiorari denied 245 Ala. 47, 15 So.2d 605, is conclusive of this proposition. In said opinion appears the following:

" 'It is well settled that where a person by trick or fraud, obtains possession of property, intending at the time of obtaining the property to convert it to his own use, and does so convert it, the fraud is the equivalent of a felonious taking, and the offense is larceny.'

"Or as our own Supreme Court said: 'At common law, if one secures the possession of a chattel, not the title thereto or a special property therein, by or with the consent of the owner, through a fraudulent trick or device, then intending to steal the chattel, it is larceny.' Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., supra, 207 Ala. 265, 92 So. [429], 430, 24 A.L.R. 734."

Upon certiorari of the above case, the Supreme Court said: "It is a familiar rule that when one acquires the possession of property tortiously, and afterwards con-

ceives and executes the purpose to convert it, he may be guilty of larceny. Weaver v. State, 77 Ala. 26; Dozier v. State, 130 Ala. 57, 30 So. 396. Also that where one has the bare charge or custody of property of another, the property being under the dominion and control of the owner, the party having the bare custody may be guilty of larceny if he converts it to his own use with the purpose of depriving the owner of it."

From what has been said hereinabove it appears conclusively that the crime complained of has been committed, this without semblance of dispute or conflict in the evidence. As a defense, the defendant denied all and any knowledge of, or connection therewith, and he testified that at the time and place of the commission thereof, he was at a place many miles distant, and further, that he had never been in the Town of Florala, Ala., the place where the undisputed testimony tends to show the crime was actually committed. Under this status the main, controlling and conclusive question of fact for the jury to determine was whether or not the testimony adduced was sufficient to satisfy and convince the jury beyond all reasonable doubt that the defendant did commit the crime complained of and charged in the indictment. As noted, the jury returned the verdict adverse to the contention of the defendant, and judgment of conviction was duly pronounced and entered, from which this appeal was taken. In our opinion the testimony was ample to support the verdict of the jury and sustain the judgment of conviction.

We have carefully read and duly considered all the evidence adduced upon the trial. We have also attentively considered each and every exception reserved to the rulings of the court pending the entire trial; and these are numerous. We have found no ruling of the court calculated to prejudice the substantial rights of the defendant. To the contrary, we state it would be difficult to conceive of a fairer trial than was accorded this appellant. In many instances the trial court's rulings accorded to the accused more rights and privileges than he was entitled to under the law. We think the trial court was extremely merciful to the defendant in fixing his punishment at so slight a period in the penitentiary, the sentence, as shown by the record, being for two years only.

We reiterate, that each and every ex-ception reserved to the court's rulings pending the trial have been carefully and fully considered. But we refrain from discussing these several exceptions in detail deeming it would serve no good purpose to do so. We do hold that the affirmative charges requested by defendant in writing are not in point, and there was no error of the trial court in refusing said charges.

The record is regular in all respects and no reversible error appearing in any of the rulings of the court, it follows that the judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.