273 So.2d 227

Mack **KELLEN**

v.

**STATE.**

**l Div. 90.**

Court of Criminal Appeals of Alabama.

Nov. 21, 1972.

Rehearing Denied Dec. 12, 1972.

William J. Baxley, Atty. Gen., and Don C. Dickert, Asst. Atty. Gen., for the State.

Fred Blanton, Birmingham, for appellant.

## PER CURIAM.

The indictment charged that the appellant "did buy, receive, conceal, or aid in concealing a lot of pine lumber, to-wit, 102 pieces of 2 x 8 x 16 s4s # 3 pine lumber and 237 pieces of 1 x 8 RL (random lengths) s4s # 3 pine lumber, of the value of, to-wit, $364.00, the personal property of Scotch Lumber Company, a corporation, knowing that the same was stolen, and not having the intent to restore same to the owner, against the peace and dignity of the State of Alabama." The appellant entered a plea of not guilty. The trial resulted in a verdict as follows, "We, the jury find defendant guilty." Judgment was entered by the trial court in accordance with the verdict and the appellant was thereby sentenced to imprisonment in the penitentiary for three years as punishment for said offense.

On the trial of this case Nolen Bryant testified in substance that he was sales manager for Scotch Lumber Company, a corporation, in December, 1969; that he handled pine lumber sales, managed the running of the planer mill, getting the lumber through the machine, and shipping the lumber; that he checked the bills of lading after they were made out; that they used Mack Kelly's trucks in shipping the lumber; that on December 12, 1969, lumber was billed out to Segars Building Supply of Bessemer; that the lumber was loaded on Friday, December 12, that two bundles of lumber were loaded; that one bundle of 2 x 8 x 16 # 3 containing 102 pieces was loaded and one bundle of 1 x 8 random lengths # 3 containing approximately 220, 225, or maybe 250 pieces was loaded; that the lumber was loaded on Friday and delivered to Segars in Bessemer on Monday; that Dwight Johnson was driving for Mack Kelly at that time; that there was another bundle of 2 x 8 x 12 loaded also; that he learned on December 15 that there was a shortage of this lumber which was billed out to Segars in Bessemer; that he began an investigation about the shortage that day; that Scotch Lumber Company marked its No. 3 lumber with a circle made in reverse; that he could identify the lumber by the mark; and that the 102 pieces of 2 x 8 x 16 # 3 and the 1 x 8 random lengths approximately 237 pieces had a market value of around $300.00; that he had worked for Scotch Lumber Company since 1952; that prior to that he had worked for Mack Kelly and that was the same Mack Kelly he said owned the truck that hauled this lumber; that Mack Kelly operated seven trucks for Scotch Lumber Company and they used Mack Kelly's trucks but the lumber in question was not loaded on a leased truck; that Scotch Lumber Company asked him to carry this load; that prior to this he had refused to sell Mack Kellen lumber but that he sold the lumber to Dwight Johnson when Mack Kellen was present; that he did not know that Johnson was buying the lumber for Kellen and was paid a commission for buying the lumber; that he saw the lumber in question on the truck; that it was strapped; that in addition to the two bundles in question there were some 2 x 8 x 12, 2 x 4, one package of 2 x 12; and that the two packages in question were loaded on top.

Joe Bill Findley testified in substance that he was the shipping clerk for Scotch Lumber Company; that his duties were to load the pine lumber on trucks and box cars; that he supervised the loading of lumber to Mr. Segars in Bessemer about the middle of December on a Friday; that the lumber left the company during the weekend sometime; that there were 2 x 8 x 16 on that load and a bundle of 1 x 8 random lengths on that truck; that this lumber was marked with a circle counter-clockwise; that it was such that he could identify it if he saw it again and that he did not see the lumber after it left Scotch Lumber Company; that all the

lumber on the truck was strapped; and that he showed this lumber on the truck to Mr. Bryant.

Dwight Johnson testified in substance that he was an inmate of the Alabama prison system; that he had served about four years and was on parole and his parole has been revoked; that he was also under indictment for stealing lumber from Scotch Lumber Company; that in December, 1969, he was employed by Mack Kelly Corporation as a truck driver; that on or about December 15 he hauled lumber from the Scotch Lumber Company about 2:00 A.M.; that he picked the lumber up under a shed at the Scotch Lumber Company yard; that he and the lumber were headed for Segars Building Supply Company in Bessemer; that this was his first trip to that place; that when he pulled out he went to Grove Hill to the Pine Belt Homes; that he parked in the driveway at Pine Belt Homes and in front; that he unloaded two bundles of lumber there of the type of 2 x 8 and 1 x 8; and that none of the lumber was billed out to Mack Kellen. At that point the record discloses the following:

"Q. What agreement did you have with Mack Kellen whereby you could unload this lumber at his place of business?

"A. Just any time that I had any. No specified time.

"Q. What arrangement of price, or payment or sharing of proceeds did you have with him about lumber you would unload there, including this?

"A. Well, about half the value of the lumber."

Johnson further testified that he entered that agreement with Kellen at a cafe in Grove Hill about one month before this; that on this occasion he unloaded two bundles; that he knew how much was in the 2 x 8 for it was marked on the bill; that after he unloaded two bundles he then went to Bessemer; that when he got there the lumber was checked; that was unusual but this was a special order from Segars; that Mr. Segars reported the shortage to Scotch Lumber Company; that when he got back he was arrested and charged with larceny of the lumber he unloaded at Mack Kellen's; that on Thursday after he got back he saw Mack Kellen at the Midway Restaurant and had a conversation with him about the two bundles of lumber he had unloaded and told him that he wanted $150.00 for it and Kellen paid him the $150.00 in cash; that he and Kellen had an agreement that what lumber he unloaded for Kellen he would receive approximately half of the value; that he put the lumber off beside the driveway in the front yard at the Pine Belt Homes in clear view of the road; and that he called Mack Kellen the morning he unloaded the lumber before daylight and told him he had unloaded the lumber and later saw him on Thursday and settled with him.

This witness further testified that he had delivered other lumber to Mack Kellen under this same plan whereby he would deliver lumber to him and get half of what it was worth; that he had known Mack Kellen for about fourteen years and that Kellen knew that he was a convicted thief and was out on parole for stealing.

David W. Segars testified in substance that he operated Segars Building Supply; that on December 15, 1969, he received a load of lumber and plywood; that he unloaded the lumber with his fork lift; that he checked it; that the lumber was short one package of 2 x 8 x16 and one package of 1 x 8 random lengths; that those two packages were on the bill but not on the truck; that the driver of the truck told him we must have shorted this and that there was another truck coming through and they might put it on it; and that he called Nolen Bryant and notified him and that he marked the bill to show the shortage and that the lumber that was short had a market value of about $400.00. He further testified that he later learned that the truck driver who delivered the lumber was

named Dwight Johnson and that he had seen him in the witness room at the trial.

Mack Kelly testified in substance that he employed Dwight Johnson as a truck driver in December, 1969; that on or about December 15, 1969, Dwight Johnson as his truck driver delivered a load of lumber from Scotch Lumber Company to Segars Building Supply in Bessemer; that this was a Monday morning; that he received information from Nolen Bryant that there was a shortage in the lumber when it arrived; that Johnson brought a receipt back to him showing some of the lumber checked off that was on the bill of lading; that he had a description of the lumber which was missing; that he made an effort to find out where the lumber was; that he went out to the Pine Belt Homes office; that he did not have a search warrant; that he did not search; that he just got out at the house and knocked on the door; that a driveway led to the house; that he drove in the driveway and saw some lumber; (At this point counsel for appellant stated to the court that the house the witness was referring to was the office of Pine Belt Homes Corporation and that no one lived there and that the business was operated there.); that he had knowledge of the lumber which was short; that he recognized the lumber he saw as being that missing off his truck; that he had the ticket billed out from Scotch Lumber Company which his driver had returned to him; that the lumber was in plain view; that he roughly counted the 2 x 8; that the lumber was at the Pine Belt Homes; that the house was about one hundred feet from the highway; that he did not go there to search the premises; that he went out there to see Mack Kellen and drove out there and came back; that he did not recall seeing the lumber from the highway; that he saw the lumber before he got out of the car; that he did not observe the marking on the lumber that day but he went back out there the following day and observed the markings on the lumber which was in the same place; that he was back out there the following day with Jack Hamilton and the sheriff; that the lumber was in the same condition and in the same place; that the lumber was still open to casual view and in plain sight; that he was in his car driving up to the place about one hundred feet from the lumber when he first saw it; that he noticed the stack of 2 x 8 and that was what he was interested in locating and that stack was in plain view; that this stack of lumber was described on the invoice; that he made a quick check on his first trip of the 2 x 8 and noticed there was a pile of 1 x 8 which was like that listed on this truck; that he did not count the 1 x 8 but there was roughly 100 2 x 8; that there were 102 listed on the invoice; that he hauled a lot of lumber for Scotch and could identify the lumber by Scotch's mark; that he knew Scotch's mark; that on the second trip the following day they counted 102 2 x 8 x 16 and Mack Kellen was there at that time.

Nolen Bryant was recalled as a witness and testified in substance that he went out to Pine Belt Homes on Friday; that he could see the lumber from his car as he drove up there; that he looked at the lumber and looked at the identification marks on it; that he could tell whose lumber it was; that it was Scotch Lumber Company's lumber; that he counted the 2 x 8 and there were 102 of them; that it was the same lumber which had previously been shipped to Segars; that there was a bundle of 1 x 8 there which was Scotch's lumber and that in his best judgment it was the same lumber which had been shipped to Segars; that Scotch Lumber Company had never sold Pine Belt Homes any 2 x 8 x 16 and that it had never sold Pine Belt Homes any 1 x 8 random lengths # 3; that it had never sold any one or both of those bundles to Mack Kellen; and that the Pine Belt Homes office was west of Grove Hill on the Coffeeville Highway in Clarke County.

There was other evidence offered on behalf of the State consistent with that set out above.

The appellant testified in his own behalf. He denied any guilty knowledge that the lumber in question had been stolen. He admitted drawing a check payable to cash for $150.00 on December 18, 1969, and that his son had endorsed the check and got it cashed and he gave Dwight Johnson the $150.00 in cash for some lumber. He also admitted that he bought lumber from Dwight Johnson once before and that he bought that lumber about three weeks prior to the $150.00 purchase. He testified that he, his wife, and his son were stockholders of the Pine Belt Homes. He said that he did not know how much lumber there was in the two stacks which he bought from Johnson and that he didn't check.

We have set out the evidence at some length in this opinion because of the nature of the appellant's complaint in regard to error in this case.

When the State rested during the trial of this case the appellant made a motion to exclude the evidence. This motion was overruled by the trial court. There we meet the first complaint of the appellant.

■ There was substantial evidence submitted by the State of the guilt of the appellant. Thus, said motion to exclude the evidence was properly overruled. Massengale v. State, 36 Ala.App. 195, 54 So.2d 85; Sullivan v. State, 48 Ala.App. 347, 264 So. 2d 576.

One of the contentions of the appellant on this appeal is in substance that Dwight Johnson embezzled the lumber in question; that he did not steal it and that it came into his possession lawfully and with the consent of the owner. Appellant argues in brief that since the lumber was not the subject of larceny the appellant could not be legally convicted of buying or receiving stolen property. This contention and argument overlooks larceny by trick or fraud. In the case of Reynolds v. State, 31 Ala. App. 259, 15 So.2d 600, cert. denied 245 Ala. 47, 15 So.2d 605, said:

"Or as our own Supreme Court said: 'At common law, if one secures the pos-

session of a chattel, not the title thereto or a special property therein, by or with the consent of the owner, through a fraudulent trick or device, then intending to steal the chattel, it is larceny.' Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., supra [207 Ala. 265, 92 So. [429] 430, 24 A.L.R. 734].

"And the following quotation from 17 R.C.L. at page 13 is apt, viz: 'If a person with a preconceived design to appropriate property to his own use, obtains possession of it by means of fraud or trickery, the taking under such circumstances amounts to larceny.' "

See also Powers v. State, 31 Ala.App. 614, 21 So.2d 282.

■ In the case at bar there was evidence that the appellant and Dwight Johnson, the driver of the truck which hauled the lumber in question, entered into an agreement about one month before the lumber was delivered to appellant that Johnson would deliver lumber to appellant and appellant would pay Johnson one-half of its value; that during that month Johnson made one delivery of lumber to appellant before the one in question; that Johnson delivered the lumber in question in the nighttime; that appellant paid him about one-half of its true market value; that appellant did not know the amount of the lumber or check it to see; that appellant knew Johnson was a driver for Mack Kelly and hauled lumber from Scotch Lumber Company to customers of that company; that Johnson called appellant on the morning of the delivery and informed him of the delivery. If the jury believed that evidence it would then be without question that Johnson secured the possession of the lumber by fraud or trickery with a preconceived design to appropriate the lumber to his own use and that he did so appropriate it and those facts were known to the appellant who was a party to the fraudulent scheme. It is the holding of this Court that there was ample evidence that the lumber was stolen property as shown by

the evidence in the case. It was clearly a jury question which was decided by the jury adversely to the appellant.

■ The appellant contends that Johnson was an accomplice of appellant in the offense charged and that there was insufficient corroborating evidence as required by law. We do not agree with that complaint. In the case of Smith v. State, 230 Ala. 413, 161 So. 538, the rule as to corroboration is stated in this manner:

"Whether or not there was evidence corroborating the accomplice witness, tending to connect the defendant with the commission of the offense, is a question of law; its weight and sufficiency, along with the testimony of the accomplice to show the defendant's guilt beyond a reasonable doubt, were questions for the jury. Code 1923, § 5635; Read v. State, 195 Ala. 671, 71 So. 96; Doss v. State, 220 Ala. 30, 123 So. 231, 68 A. L.R. 712; Lindsey v. State, 170 Ala. 80, 54 So. 516.

"It is not necessary that the corroborating evidence refer to any particular statement or fact testified to by the accomplice. If it strengthens the probative criminating force of his testimony and tends to connect the defendant with the commission of the offense, it is sufficient to warrant the submission of the issue of guilt or innocence to the jury. Malachi v. State, 89 Ala. 134, 8 So. 104; Ross v. State, 74 Ala. 532; Palmer v. State, 165 Ala. 129, 51 So. 358; McDaniels v. State, 162 Ala. 25, 50 So. 324."

There was testimony in this case, other than that of the accomplice Johnson, that the lumber in question was loaded on the truck driven by Johnson; that it was not on the truck when it arrived in Bessemer at Segars Building Supply; that it was delivered in the nighttime to the appellant and he admitted in his testimony that he was informed of the delivery; that the lumber was found at his place of business;

that appellant was a stockholder and general head of that business, a family corporation; that the appellant paid for the lumber but only about one half of its value and that he did not know the amount of it and did not check it and other evidence tended to connect the defendant with the offense. This evidence corroborated the testimony of the accomplice Johnson and connected appellant with the offense and, if believed, strengthened the probative criminating force of Johnson's testimony. It clearly meets the rule of corroboration required by the law of this State.

There is no merit in the contention of the appellant in that respect and the rulings of the trial court related thereto is without error.

The appellant complains that the lumber was discovered and seen by the witness Mack Kelly on his first trip to the office of Pine Belt Homes as a result of an unlawful search and that it was discovered and seen by Kelly, the County Sheriff and his deputy the following day as a result of an unlawful search. His objections to the evidence as to their discovery of the lumber and that they saw it at said place of business was overruled by the trial court. On this appeal appellant claims such rulings on the part of the trial court were error sufficient for reversal.

In Knox v. State, 42 Ala.App. 578, 172 So.2d 787, cert. denied 277 Ala. 699, 172 So.2d 795, it is stated:

"In Kelley v. State, 39 Ala.App. 572, 105 So.2d 687, this Court held that '[a] mere observation of that which is in full view is not a search.' In Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746, the court stated, in effect, that the doctrine of the Fourth and Fifth Amendments 'apply to all invasions on the part of the government and its employes of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offense; but it is the in-

vasion of his indefeasible right of personal security, personal liberty, and private property * * *.' Thus, we are of the opinion that 'in plain view' as used in the Kelly case, supra, cannot be construed to mean in plain view of a police officer within a private residence only after the officer's entry therein without legal authority—i. e., as a trespasser. Where a police officer enters a private residence without legal authority, any incriminating evidence discovered and seized therein after the entry is the fruit of an unreasonable search and seizure, and, further an arrest based on such evidence is illegal and no derivative right of search and seizure attaches thereto. See Weldon v. State, 39 Ala. App. 286, 97 So.2d 825.''

█ 'In the case at bar, Mack Kelly was not a police officer when he went to the place and discovered the lumber in question. He stated that he went there to see Mack Kellen, the appellant; that he did not enter the building; that he knocked on the door and left; that he did not search or look around the grounds behind the building; that he saw the lumber as he drove up the driveway; that he could identify it by its markings; that it was open to casual view and was not concealed from his view. The evidence further showed that this was a building in which Pine Belt Homes conducted its business and that it was not a private residence; and that no one lived there. Under such circumstances Mack Kelly was not a trespasser but an invitee and his testimony in no way offended the rules laid down in *Knox*, supra. The plain view doctrine renders his testimony admissible. His testimony concerning his trip to the same place the next day for the same reason was also admissible.

Hybard Paul, Sheriff of Clarke County, testified in substance that he went out to the Pine Belt Homes Office on December 19; that he knew Mack Kellen and that he was manager of the Pine Belt Homes Office; that Kellen was at the office when the sheriff arrived; that he saw the lumber in question; that all of it was in clear view; that there were six or eight packages of lumber; that he picked up one stack of 2 x 8 x 16; that Mr. Bryant identified the lumber for him and he picked up all the lumber which was identified as belonging to Scotch; that his deputy was there when the lumber was removed but he was not; that the lumber he had picked up was stored in a warehouse; and that the basis of Mr. Jackson, the Circuit Clerk, issuing a search warrant was on his affidavit, information, and belief.

Harvey Jackson testified in substance that he issued two search warrants, one on the affidavit of Dwight Harrigan and the other on the affidavit of Sheriff Paul. Act No. 517, Vol. 11, 1963 Acts of Alabama, Organizational, First Special, Second Special, Regular Sessions, page 1105 was offered in evidence by the State. Copy thereof is in the record of this case. That act is a general act with local application to Clarke County. It provides:

" . . . [T]he clerk of the county courts or other inferior courts may take affidavits and complaints in misdemeanor and felony cases, may issue warrants of arrest in such cases, and may issue search warrants. Such complaints, warrants and search warrants issued by the clerk shall have the same legal force and effect as though the same had been taken or issued by the judge of the court. . . . "

█ The Circuit Clerk also testified that he was Clerk of the Circuit Court of Clarke County and ex-officio Clerk of the Inferior Court of Clarke County. Neither of the search warrants issued in this case was offered in evidence. Their contents of the disposition or affidavits executed in connection therewith are not before us. The evidence does show that the search warrants had been issued before the sheriff saw the lumber and had it picked up. On the hearing of the motion for a new trial the appellant offered certain evidence including the affidavit of Sheriff Paul and

the search warrant issued as a result thereof in an effort to show the affidavit was insufficient to support the issuance of the search warrant. Such evidence comes too late. Objections to evidence and grounds therefore must be made and entered during the trial. The ruling of the trial court in sustaining objection to the admission of the affidavit and search warrant on the hearing of the motion for a new trial was without error. The only question we see as to the validity of the search warrants is that the evidence does show they were issued by the Clerk of the Inferior Court of Clarke County.

The authority as to who issues search warrants is statutory and the statutes requiring search warrants to be issued by a magistrate, existing at the time of the passage of Act No. 517, supra, could be amended or repealed by the Act to the extent in conflict therewith. Said Act contains a provision that all laws or parts of law in conflict with this act are repealed. Said clerk had legal authority to issue the search warrants. Furthermore, this Court holds that under the evidence of this case the lumber in question was shown to be in plain view and the sheriff and his deputy were not trespassers when they saw the lumber. The lumber was not offered in evidence. The fact that the sheriff saw it was not the result of an unlawful search even if he had not had a search warrant. It was not in any building but on the ground and in plain view at a place of business and a search was not required to see it. It was not error to allow the sheriff and others to testify that they saw the lumber, which was in plain view, and to describe what they saw.

We have searched the record in this case and we find no error therein.

It is ordered and adjudged by this Court that the judgment in this cause be and hereby is

Affirmed.

All the judges concur.