273 So.2d 235

Mack **KELLEN**

v.

**STATE.**

1 Div. 132.

Court of Criminal Appeals of Alabama.

Nov. 21, 1972.

Rehearing Denied Dec. 19, 1972.

Fred Blanton, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Don C. Dickert, Asst. Atty. Gen., for the State.

PER CURIAM.

The indictment in this case contained two counts. Count one charged that Mack Kellen did "buy, receive, conceal, or aid in concealing a lot of pine lumber, to-wit, 2 x 4 x 12 size and, to-wit, 355 pieces there-

of . . . of the value of, to-wit, $308.-00, the personal property of Jack Hamilton knowing that the same was stolen and not having the intent to restore the same to the owner." The second count charged the appellant with grand larceny in connection with the lumber. The appellant entered a plea of not guilty and the trial resulted in a verdict of the jury as follows, "We, the jury, find the defendant guilty as charged." Judgment was entered by the trial court adjudging the appellant to be guilty of buying, receiving or concealing stolen property and sentencing him to a term of three years in the penitentiary as punishment. The appellant filed a motion for a new trial. This motion was denied and overruled by the trial court. Hence, this appeal.

Jack Hamilton testified in substance that he lived in Arab, Alabama, and was in the wholesale lumber business; that in December, 1969, he purchased some lumber from Dunbar Lumber Company, Laurel, Mississippi; that Mack Kelly's truck hauled the lumber for him; that Dwight Johnson drove the truck; that he saw the lumber loaded on the truck; that the lumber was marked "SPIB" and it had on it No. 324, the mill identification number; that the lumber was loaded on Friday, December 12, 1969, at Laurel, Mississippi; that he saw Dwight Johnson at the Rebel Truck Stop, Grove Hill, Alabama, that night; that Johnson was with Mack Kellen at the time he saw him in Grove Hill at "2:00 o'clock Friday night;" that when the lumber arrived at its destination it was short three packages, 540 pieces; that the lumber was 2 x 4 x 12, No. 2; that he has seen the lumber which was short since that time out west of Grove Hill; that the destination of the lumber was Holiday Homes at Lynn, Alabama; that the lumber which was short, or did not arrive at Lynn, had a market value at the time of $430.00; that he received from the people of Lynn a deduction for the lumber which was short on their check when they paid him for the lumber delivered; that Mack Kelly paid him over $400.00 for the lumber which was short on delivery; that he had a conversation with Mack Kelly about the shortage and he paid off the shortage; that Dwight Johnson was an employee of Mack Kelly; that he saw the truck and lumber on it in Grove Hill on that Friday night and saw Dwight Johnson drive the truck away from the truck stop before the witness left the truck stop; that the lumber he saw out west of Grove Hill was the lumber which came from the mill at Laurel; that it had the same grade mark and the same mill number; that the lumber was also the same length of 2 x 4 which he bought in Laurel; and that he knew the lumber he saw was the lumber he purchased in Laurel, Mississippi.

Dwight Johnson testified in substance that he drove a truck for Mack Kelly; that on December 12, 1969, he picked up a load of lumber for Jack Hamilton at Laurel, Mississippi, about noon, to haul to Lynn, Alabama; that he proceeded to Grove Hill with it and arrived there around three or four o'clock in the afternoon; that he left Grove Hill between two and three o'clock the following morning; that he had 2 x 4's on the truck; that he unloaded two bundles (180 pieces to the bundle) of the lumber at Mack Kellen's office on U. S. 84 West of Grove Hill about 2:00 A.M.; that Kellen and his son and step-daughter were present when he unloaded it and Kellen and his son helped him unload it; that Kellen later that same morning gave him $125.00 for the lumber; that he and Kellen had prior arrangements for him to unload it at Kellen's; that he told Kellen whose lumber it was; that he told Kellen it was Jack Hamilton's lumber; that he saw Jack Hamilton that night at the Mid-way Truck Stop and that Kellen was with the witness at that time; that he delivered the rest of the lumber to its destination; that he received a tally sheet of the amount of the lumber from the Dunbar Lumber Company in Laurel showing the amount of the lumber loaded on the truck signed by Jimmy Tidwell and signed by the

witness as having received it; that this was the load of lumber he went by Kellen's office with and that he unloaded the two bundles in question; that he delivered the tally sheet to Mack Kelly (The tally sheet was admitted in evidence); that he and Kellen had talked on different occasions prior to this about arrangements for him to deliver lumber to Kellen; that they did not hide the lumber which he unloaded at Kellen's; that they took it off the truck and Kellen was supposed to move it that night or sometime that day so it was just left out in the open; that Kellen paid him for the lumber that morning by check; that he heard from Hamilton about the shortage on December 19, 1969, about one week later; that he was arrested about one week after he unloaded the lumber; and that the lumber was unloaded at Mack Kellen's in Clarke County, Alabama, and that the lumber consisted of 2 x 4's which he estimated to be twelve feet long.

Hybard Paul, Sheriff of Clarke County, testified in substance that he went to the office of Mack Kellen on December 19, 1969, along with Nolan Bryant, a lumber grader for Scotch Lumber Co., Mack Kelly, and Jack Hamilton, and that he had a search warrant.

At that point a hearing was held outside the presence of the jury as to the validity of the search warrant. The search warrant and the affidavit in support thereof was introduced in evidence by the appellant. The affidavit is as follows:

"AFFIDAVIT FOR SEARCH WARRANT

"STATE OF ALABAMA
"COUNTY OF CLARKE

"Before me, Harvey H. Jackson, personally appeared H. D. Paul who being duly sworn deposes and says: That he has reason to believe that on the premises known as a brick house approximately 1 mile west of Grove Hill on Hwy. 84, across from Claud Waite home the owner of which is unknown but in possession of Pine Belt Home Corp., Mack Kellen, Agent, in Clarke County, Alabama, there is now being concealed, kept, stored, or offered for sale, contrary to law, certain property, namely: approximately 100 pieces of 2 x 8 x 16 S4S pine lumber #3 Grade, crayon marked with circle made backwards, yellow mill brite treatment, and approximately 220 pieces of 1 x 8 random lengths, #3 S4S, with crayon mark circle made backwards which are (here give alleged grounds for search and seizure), untaxed, spirituous, vinous or malt liquors, contrary to law, Investigation conducted by Sheriff and his office force and observing Mack Kellen going to and from said home during nighttime and further from information furnished by informer who is well known by Sheriff, a respected citizen of the community, who advised Sheriff that he had observed a red truck unloading lumber at said dwelling during the nighttime. And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: Same as above.

"/s/ H. D. Paul

"Sworn to before me, and subscribed in my presence this 19 day of December, 1969.

"/s/ Harvey H. Jackson
Circuit Clerk

Mack Kelly testified in substance that he went to the Pine Belt Homes premises the day before the sheriff's search; that he went there to see appellant; that he did not look around the premises; that he only looked at the lumber "right there where you pulled up;" that he recognized the 2 x 8 x 16 and the 1 x 8; that he did not look at any other stacks; that he only looked at the two stacks lying where he pulled up; (The lumber involved in the case at bar was 2 x 4); that he knew at the time that some lumber was missing from the Jack Hamilton load; that he did not see that lumber; that he did not talk to the sheriff that night but he did the

next morning; that they went out there the morning after his first visit with the sheriff and Jack Hamilton; that the lumber he saw the day before was in plain view but he did not see the Jack Hamilton lumber; and that the lumber he saw was at the office of the Pine Belt Homes.

Sheriff Hybard Paul was recalled to the stand and further testified that he went out to appellant's office armed with a search warrant; that he went there to look for lumber; that appellant was there and he told appellant that he had a search warrant and asked him to read it; that he commenced his search of the premises; that he uncovered some 2 x 4 x 12's; that some of them were covered with tar paper which had been tacked around them and that one pile had tar paper lying on top; that he had to remove some tar paper from some of these 2 x 4's; that he found 355 pieces; that Jack Hamilton identified them at that time and place; that he did not know Mr. Hamilton's lumber was there until he went there; that he talked to Hamilton after he went there; that while he was there one of the men with him, who was identifying Scotch Lumber Company's lumber, said that this was Mr. Hamilton's lumber and that they then contacted him; that Hamilton's lumber had tar paper over it; and that the Hamilton lumber was marked "SPIB" and had No. 324 on it.

The evidence shows that a search had to be made for the lumber involved in the case at bar. There is no evidence that the markings could be seen before it was uncovered.

The question of the validity of the search and the admissibility of the evidence produced by the search was properly raised by a motion to suppress.

There are two facts stated in the affidavit upon which the search warrant was issued: (1) that Mack Kellen had been observed going to and from his home during the nighttime, and (2) that the sheriff had been advised by an informer, a respected citizen of the community, that he had observed a red truck unloading lumber at said location during the nighttime. The lumber described in the affidavit is not the lumber described in the indictment in this case and is not the lumber seized in the execution of the search warrant in this case. It is apparent from the record that the search warrant was not issued to search for the lumber involved in this case but for that involved in another case. The affidavit does not state that the lumber described was the subject of any offense. It is totally silent as to why a search should be made for the lumber. It says there was stored, contrary to law, at the place to be searched certain property, namely: approximately 100 pieces of 2 x 8 x 16 S4S pine lumber #3 Grade, etc., which are untaxed, spirituous, vinous or malt liquors, contrary to law. The affidavit at best is confusing, ambiguous and uncertain. It is signed and sworn to by H. D. Paul before Harvey H. Jackson, Circuit Clerk. While as a matter of law Harvey H. Jackson may have been the ex-officio clerk of the Inferior Court of Clarke County, Alabama, his name does not appear on the affidavit as the clerk or ex-officio clerk of said Inferior Court.

In Crim v. Crim, 39 Ala.App. 413, 101 So.2d 845, probable cause is defined in this manner:

"The expression 'probable cause' has been defined in Lunsford v. Dietrich, 93 Ala. 565, 9 So. 308, 310, ' "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged." ' . . . ' "probable cause is such a state of facts and circumstances as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice, to believe that the person accused is guilty." ' "

Applying that definition of probable cause to the statutory demand that the

**480**

depositions of the witness must set forth facts tending to establish the grounds of the application or probable cause for believing that they exist before a search warrant may be issued, we hold that such probable cause is not shown by the affidavit in the case at bar. There is not such a state of facts and circumstances set forth in said affidavit executed by the sheriff as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice, to believe the grounds of said application for the search warrant existed or to have probable cause for believing that they existed. It is common knowledge that many men go to their office at night and that deliveries such as lumber are sometimes unloaded at places of business and at homes at night. Such facts, without more, would appeal only to the most suspicious mind. It would certainly take more than was contained in said affidavit. There was no other competent evidence submitted to secure the search warrant. Said affidavit was insufficient to support the search warrant. Therefore, the search warrant was not valid and the search was illegal.

█ Since the search was illegal those making the search were trespassers and could not legally testify to what they found or saw on the premises. The admission of such evidence was error. Duncan v. State, 278 Ala. 145, 176 So.2d 840.

Dwight Johnson testified that he hauled the lumber in question as a truck driver for Mack Kelly; that he had a prior agreement with appellant to sell him lumber; that appellant knew it was stolen lumber; that he, Johnson, unloaded the lumber at appellant's office and appellant paid him for it; and that appellant told him not to unload any more stolen lumber at his place and to stay away from his place because they were being watched. Since the evidence, other than Johnson's testimony, connecting the appellant with the offense was erroneously admitted,

there remains insufficient competent evidence to corroborate the testimony of the accomplice. Therefore, the motion to exclude should have been granted.

We find the factual situation in this case vastly different from the facts in the case of Kellen v. State, 49 Ala.App. 467, 273 So.2d 227.

For the error noted, it is ordered and adjudged by this Court that the judgment in this cause be reversed and the cause remanded.

Reversed and remanded.

CATES, P. J., and ALMON, TYSON and HARRIS, JJ., concur.

DeCARLO, J., concurs in the result.